## Case No. 5,083.

### In re FREEMAN.

[2 Curt. 491.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1855.

CURTIS, Circuit Justice. The creditor in an execution which issued out of this court at the last term has obtained a rule on the marshal to show cause why he has not levied the same on the body of the debtor, pursuant to the exigency of the writ and the order of the creditor. The marshal has shown for cause, the act of congress of February 28, 1839 (5 Stat. 321), which enacts, "that no person shall be imprisoned for debt in any state on process issuing out of a court of the United States, where by the laws of such state imprisonment for debt has been abolished; and where by the laws of a state, imprisonment for debt shall be allowed under certain conditions and restrictions, the same conditions and restrictions shall be applicable to the process issuing out of the courts of the United States; and the same proceedings shall be had therein as are adopted in the courts of such state." Also the act of January 14, 1841 (5 Stat. 410), which requires the above act to "be so construed as to abolish imprisonment for debt, on process issuing out of any court of the United States, in all cases whatever, where by the laws of the state in which the court shall be held, imprisonment for debt has been or shall be abolished." Also a law of the state of Massachusetts, passed May 21. 1855 [Gen. Laws Mass. 1855, p. 90, c. 444], entitled "An act to abolish imprisonment for debt and to punish fraudulent debtors."

Assuming that congress can adopt, prospectively, future legislation of the several states abolishing imprisonment for debt, the first inquiry is whether imprisonment for debt has been abolished in the state of Massachusetts within the meaning of the act of congress quoted above. On examining this law of Massachusetts, we find, though it declares imprisonment for debt is abolished, it expressly allows a creditor to imprison his debtor upon complying with certain conditions prescribed by the act; and this, not by way of punishment of the debtor, but as a remedy to enforce payment of the debt. That this is a proceeding to be taken by a creditor at his election, to be prosecuted, or discontinued at his pleasure, in which he is treated as one party, and the debtor as the other party, and the sole object of which, if no charge of fraud is filed, is to enforce payment of the debt, is clear; and no charge of fraud need be filed. The debtor is liable to be arrested if the creditor make oath and prove to the satisfaction of a magistrate, that he has reason to believe and does believe that the defendant has property not exempt from execution, which he does not intend to apply to the payment of the plaintiff's claim. This does not even imply any fraud. It would be difficult to say that it implies any breach of any legal duty. For the debtor may intend to apply his property to pay another just debt, or to pay the two pro rata; or he may even have formed no intention on the subject, and yet be, within the act, liable to arrest. While, therefore, the act does in terms say, it abolishes imprisonment for debt, and punishes fraud, it does in equally clear terms, allow an execution to be levied on the body of a debtor, guilty of no fraud, to enforce payment of a debt. We are of opinion, therefore, that imprisonment for debt has not been abolished in the state of Massachusetts, within the meaning of the acts of congress. But it is true, that this law of Massachusetts does allow imprisonment, under certain restrictions and conditions, and this renders it necessary to inquire whether the act of congress has adopted those restrictions and conditions, and made them applicable to the process of this court. By the third section of the process act of 1828 (4 Stat. 278), which was applicable to all the states except Louisiana, it was provided that "writs of execution and other final process. issued on judgments and decrees and the proceedings thereupon, shall be the same in each state respectively, as are now used in the courts of such state." Under this act, as well as under the prior acts of 1789 (1 Stat. 93) and 1792 (1 Stat. 275), though they were held to include in general, all the regulations incident to process, yet it was also held that there were certain regulations made by state laws concerning their process, which were not intended to be adopted.

In Palmer v. Allen. 7 Cranch [11 U. S.] 550, it appeared that the law of Connecticut did not allow a debtor to be committed to jail on mesne process. without a mittimus granted by a magistrate. The marshal had com-

---

[1] [Reported by Hon. B. R. Curtis. Circuit Justice.]

mitted a debtor to prison, under the authority of a writ of capias and attachment issuing out of a court of the United States held in Connecticut, without obtaining a mittimus from a magistrate. The supreme court said, "But it is equally clear to this court, that the law above alluded to, commonly called the process act, does not adopt the law of Connecticut, which requires the mittimus in civil cases. This is a peculiar municipal regulation, not having any immediate relation to the progress of a suit, but imposing a restraint on their state officers, in the execution of the process of their courts, and is altogether inoperative upon the officers of the United States in the execution of the mandates which issue to them." This decision related to a state law concerning mesne process. In Wayman v. Southard, 10 Wheat. [23 U. S.] 1, this decision is examined, and though some other reasons are suggested in support of it, the ground stated in the opinion of the court is not impugned. Bank of U. S. v. Tyler, 4 Pet. [29 U. S.] 366, brought under review the effect of the insolvent laws of the state of Kentucky upon a debtor committed on an execution issuing from a court of the United States; and a similar question arose in Duncan v. Darst, 1 How. [42 U. S.] 301. In these cases the court held that the discharge under the state laws was inoperative. In Boyle v. Zacharie, 6 Pet. [31 U. S.] 648, it was decided, that though in Maryland, an injunction operated as a supersedeas of an execution, this regulation did not apply to executions issuing out of the courts of the United States. And in McNutt v. Bland, 2 How. [43 U. S.] 9, it was held, that a state law, which authorized the sheriff to discharge a debtor from imprisonment, in default of payment of prison fees, did not justify his discharge by the sheriff from a jail to which he had been committed by the marshal, on an execution issuing out of a court of the United States. The results of these decisions and the principles on which they have been made, may be stated as follows: (1) That the adoption of state laws of proceeding, by congress, though general, does not include all state laws concerning process. (2) That among others not included, are those which are addressed to state courts and magistrates, accompanied with grants of power which enable them to execute such laws, which powers the courts of the United States do not possess and cannot exercise.

Another view must here be adverted to, which bears directly on the main question we are now considering. It is thus expressed by Mr. Justice Story, in U. S. v. Knight [Case No. 15,539]: "Hitherto the judicial construction of the acts of congress, which have adopted state laws, touching writs and processes, and the proceedings thereon, has uniformly been that they applied to the state laws then in force. To this effect are the decisions in Wayman v. Southard, 10 Wheat. [23 U. S.] 4; Bank of U. S. v. Halstead, Id.

31; and Beers v. Haughton, 9 Pet. [34 U. S.] 329. I must confess that I entertain very serious doubts whether congress does possess a constitutional authority to adopt, prospectively, state legislation on any given subject. For that, it seems to me, would amount to a delegation of its own legislative power. And I think my doubts strengthened by what fell from the supreme court in Wayman v. Southard [supra], and Bank of U. S. v. Halstead [supra]. At all events I should not be disposed to give such a construction to any act of congress, unless it was positively required by its words and its intent." See, also, Cooley v. Board of Wardens of Philadelphia, 12 How. [53 U. S.] 299. Whether the last clause of the act of February 28, 1839, by its language and its intent, does positively require such a construction as would amount to an adoption prospectively of the legislation of the states, modifying their laws concerning imprisonment for debt, but not abolishing it altogether, is the question to be here decided. Looking at the language of the act, it will be found that, construed grammatically, a part of it points to laws of the state thereafter to exist, whether passed before the act of congress or not, and a part of it points, solely, to the then existing proceedings under those state laws. For it first says, "When by the laws of a state, imprisonment for debt shall be allowed," &c.; that is, shall be after the passage of this act, whether by virtue of laws now existing or hereafter to be passed. This would apply to state laws in existence when the act passed, and might also include those subsequently passed. "And the same proceedings shall be had therein, as are adopted in the courts of such state." This points to then existing proceedings. The more grammatical construction of the language of the act does not enable us to pronounce with certainty, whether congress did or did not intend to adopt the future legislation of the states on this subject. The next congress had its attention called to the question of the construction of this act; and as already stated, by the act of January 14, 1841, they enacted that this act should be construed to abolish imprisonment for debt, where by the laws of the state "it has been, or shall hereafter be abolished." They are silent concerning the other part of the act, which provides for modifications of such imprisonment. We think this silence has a strong tendency to show, that it was not intended to adopt, prospectively, the state laws on this subject. Considering the doubts to which the language of the act in question was calculated to give rise,—considering, also, that such prospective adoption of state legislation, was a clear departure from the settled course of congress on this subject,—we can hardly doubt, that if it had been the intention of congress to apply this new principle of legislation, to the case of subsequent modifications of the state laws concerning imprison-

ment, having the subject directly before them, they would have so declared, with the same clearness, as they do in respect to future state laws for its abolition.

Nor should it be lost sight of, that it is, practically, a very different matter, to adopt prospectively, state legislation concerning the abolition, or concerning the modification of imprisonment for debt. It may be assumed, with some degree of safety, that if a state really and entirely abolishes imprisonment for debt, the process of the courts of the United States will be as effectual as the process of the courts of the states. Not so, if the right of the creditor is modified and restricted; for it may well be, and is so in this case, that those modifications and restrictions will be accompanied with sanctions and safeguards which the courts of the United States are incompetent to apply. This law of the state of Massachusetts, while it restricts the right of the creditor, and imposes on him new conditions, also provides, in the same connection, and as part of the same system, for highly penal proceedings against debtors, viewed merely as instruments for enforcing payment; these latter are of great practical importance, and if the conditions and limitations imposed on the creditor were adopted, while the penal proceedings against the debtor were rejected, it is clear that a system of law to compel the payment of debts differing very widely from that enacted by the state, would be brought into operation. These penal enactments are not only found in the same law, and make part of the same general system with the restrictions upon imprisonment, but the proceedings under them are part of the same course of proceeding taken to enforce the judgments of the courts. And if a judgment creditor in the courts of the United States were deprived of recourse to them, he would be placed upon a different and far less advantageous footing, than a judgment creditor in a state court. Yet it is certain that none of these parts of the law of Massachusetts can have been adopted by Congress. In Gwin v. Breedlove, 2 How. [43 U. S.] 29, it was held that the process act of 1828 had not adopted similar provisions of state laws, though in existence when that act was passed; because the courts of the United States cannot execute the criminal laws of the states. A fortiori, as to such laws, passed after an act of adoption. Whether the provisions of this law of Massachusetts, exclusive of those of a criminal nature, are necessarily addressed exclusively to state officers, and are not capable of being executed by the courts of the United States, we do not deem it necessary to decide. It is to be noted, that the law of Massachusetts does not make any change in the process of the state courts, but only in the proceedings of state officers in its execution. Nor is anything to be done by any court, as such, to vary the execution of process. There can, therefore, be no proceedings in any court of the United States in conformity with this law. Whether a judge of a court of the United States, or a commissioner appointed to take affidavits, &c., could be held to be in place of the state magistrates, and exercise the powers conferred by this law on the latter, are questions not unattended with difficulty, and which we do not find it needful to decide. Independent of this consideration, we are unable to declare that congress has adopted the law of the state of Massachusetts, now in question, and consequently, it is the duty of the marshal to levy this execution, without regard to that law.

We have considered this case as if it were an execution on a judgment at law. In point of fact it is upon a decree in admiralty. By the sixth section of the act of August 23, 1842 (5 Stat. 518), the supreme court are authorized to regulate and alter the forms of writs and other process used in the district and circuit courts. Under this authority they made and promulgated a rule for regulating proceedings in admiralty (December, 1850), which contains the following clause: "And imprisonment for debt, on process issuing out of the admiralty court, is abolished in all cases where, by the laws of the state in which the court is held, imprisonment for debt has been or shall be hereafter abolished, upon similar or analogous process issuing from a state court." This has no reference whatever to modifications and restrictions upon imprisonment. It is confined to its abolition. If this rule alone governs the case, it is decisive. If it does not, and upon that we give no opinion, it certainly has a strong tendency to show, that, in the opinion of the supreme court, no law was in existence adopting prospectively state laws, which should in any manner modify imprisonment for debt. If they had not so considered, it is very improbable that the rule would have stopped where it does. We have thought it proper, not to rest our opinion on this rule, but upon grounds applicable to all executions issuing out of this court, that suitors and officers may know what, in our judgment, the law requires of them, under all such executions.